IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | Orig. Case No. 2:16-CR-00503-ER-1 |
| v. | § | |
| | § | |
| DINO PAOLUCCI, | § | HONORABLE EDWARDO C. ROBRENO |
| Defendant. | § | United States District Judge |

MOTION FOR SENTENCING MODIFICATION
UNDER 18 USC SECTION 3582(c)(1)(A)

Now Comes Dino Paolucci (Hereinafter Defendant), pro se, before this honorable Court. Defendant humbly requests this Court GRANT him Sentencing Modification pursuant to 18 USC §3582(c)(1)(A) and offers the following facts in support of his motion:

INTRODUCTION

Defendant informs this Court that he is unskilled at the profession of law and therefore asks that this Court recognize the standards set forth in Hanes v. Kerner, 404 US 519 (1979), and not hold him to the rigid standards of a professional litigaitor.

STATEMENT OF JURISDICTION

Jurisdiction is invoked pursuant to the First Step Act and 18 USC §3582 which allows an inmate to bring a request to "modify a term of imprisonment" directly to a sentencing court, and that the judge need only determine if there are "extraordinary and compelling reasons which warrant such a reduction."

1.

PROCEDURAL HISTORY

On December 13, 2018, Defendant was the subject of a twenty-six (26) count indictment. On September 06, 2019, the Defendant pleaded Guilty to Counts 22-25: Securities Fraud --in violation of 15 USC §§78(j)(b) and 78(f)(f). The remaining counts were dropped pursuant to a written plea agreement.

On December 10, 2019, this Court adopted Defendant's Pre-sentence Report -- Total Offense Level 28; Criminal History Category I; Advisory Guidelines Range 78-97 months imprisonment. Defendant was sentenced to the lower end (31.6%) of the Guidelines, 84 months in prison.

STANDARD OF REVIEW

A court may modify a term of imprisonment under only three specific circumstances. First, "as permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure" 18 U.S.C. §3582(c)(1)(B); also Fed. R. Crim. P. 35 (allowing a reduction in sentence upon a motion by the government based on substantial assistance from the defendant or within fourteen days of the sentence when there is a clear error in the sentence). Second, when the imposed "term of imprisonment [is] based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. §3582(c)(2). And third, if "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A).

The applicable Sentencing Commission policy statement referenced in §3582(c)(1)(A) is found at USSG §1B1.13 ("Reduction in Term of Imprisonment") which provides that the Court may reduce a term of imprisonment if the Court determines: 1) "extraordinary and compelling reasons warrant the reduction,"

2.

2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)," and 3) "the reduction is consistent with this policy statement." USSG §1B1.13.

## POLICY STATEMENT USSG §1B1.13

Prior to 2018, "Extraordinary and Compelling" reasons for compassionate release were limited to offenders who are elderly; terminally ill; or, unable to perform self-care. That is no longer the case. In 2018, the First Step Act (FSA) was passed and the courts have been given significant discretion in determining what qualifies as an "Extraordinary and Compelling" reason for compassionate release or modified sentence under 18 U.S.C. §3582(c)(1)(A).

Although The United States Sentencing Commission had specified some extraordinary and compelling examples, its guidelines had not been amended to reflect the changes made by the First Step Act. As such, many district courts have concluded, and circuit court opinions have held, that guideline "§1B1.13 is not an applicable policy statement in the context of defendant-filed motions." United States v. Barksdale, 2021 U.S. Dist. LEXIS 49619 at 5 (E.D. PA. March 16, 2021); See also, United States v. McCoy, 981 F.3d 271, 281 (4th Cir. 2020); and, United States v. Pollard, 2020 U.S. Dist. LEXIS 144383 (E.D. PA., Aug. 12, 2020) (collecting district court cases in support).

In the absence of an applicable policy statement (2018 through November 01, 2023), "district courts [were] empowered to consider any extraordinary and compelling reason for release that a defendant might raise[]" McCoy, Id. at 284; and "exercise its discretion to define 'extraordinary and compelling reasons' [for compassionate release]" Barksdale, Id. at 5 (E.D. PA. 2021). Based on this authority, "nothing prevents the court from concluding that any combination of

factors [] can together establish extraordinary and compelling reasons." See United States v. Brown, 2022 U.S. Dist. LEXIS 120433 at 10-11 (W.D. PA. July 08, 2022)(citing United States v. Clauson, 2020 U.S. Dist. LEXIS 131070 (E.D. PA. July 24, 2020)) (SAME).

On November 01, 2023, The United States Sentencing Commission issued its amended guidelines which reflect the changes made by the 2018 First Step Act and reinstate USSG §1B1.13 as an applicable policy statement. While the Sentencing Commission (again) enumerates several extraordinary and compelling examples, the Court retains its full discretion to consider, alone or altogether, §3553 factors and any other criteria it deems relevant. USSG §1B1.13. Reduction in Term of Imprisonment Under 18 U.S.C. §3582(c)(1)(A) (November 01, 2023, Policy Statement).

Defendant is not entitled to relief under 18 U.S.C. §3582(c)(1)(B) because he did not offer the government "substantial assistance." Instead, Defendant relies on 18 U.S.C §3582(c)(1)(A) and (c)(2), "extraordinary and compelling reasons [which] warrant such a reduction" and "a sentencing range that has subsequently been lowered by the Sentencing Commission." Id.

EXTRAORDINARY AND COMPELLING REASONS

"In General - Upon motion of the Director of the Bureau of Prisons of the defendant under 18 U.S.C. §3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that (1)(A) extraordinary and compelling reasons warrant the reduction ...

4.

Extraordinary and compelling reasons exist under any of the following circumstances or combination thereof:

(1)  Medical Circumstances of the Defendant [...]

(2)  Age of the Defendant [...]

(3)  Family Circumstances of the Defendant [...]

(4)  Victim of Abuse [...]

(5)  OTHER REASONS: The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)  Unusually Long Sentences."

See USSG §1B1.13. Reduction In Term of Imprisonment Under 18 USC §3582(c)(1)(A) (November 01, 2023, Policy Statement) at (a) In General; and, (b) Extraordinary and Compelling Reasons.

## 18 U.S.C. §3553 Factors

1.  The nature and circumstances of the offense and the history and characteristics of the defendant.

## Nature and Circumstances of the Offense

From 2012 through 2013, Defendant participated in a scheme to manipulate the stock of several public companies.  This Court noted that, while there are no identifiable victims and "restitution [] is not available in this case ... this is a serious crime ... [that] involved a significant amount of money ... [and] undermined the public confidence on our financial institutions[.]" (Sentencing Transcripts, Pg. 15 and 68).

Defendant does not deny the seriousness of his offense, to which he Pleaded Guilty and Accepted Responsibility.

### History and Characteristics of the Defendant

Defendant was born August 21, 1977, and credits his parents with providing him a loving home; regular family vacations; Catholic upbringing; access to school and sports; and introduction to business -- Defendant's father has owned DNR Technologies (a company that manufactures, sells and installs automotive production lines) since 2002 and Defendant is a V.P. of Operations. Considering his mostly privileged life, Defendant offers no excuse for his offense conduct. Defendant has been humbled by this experience and prays that he be considered for Sentencing Modification based on "any of the following circumstances or combination thereof:" Id.

2.   Need for the sentence to promote respect for the law and to provide just punishment and rehabilitative opportunities.

### Respect For The Law and Just Punishment

This Court noted that "the fact of imprisonment is as important and perhaps more important as the length of imprisonment." (Sent. Tr., Pg. 68). In Defendant's case, respect for the law and just punishment could be achieved by reducing his term of imprisonment and imposing an alternative sentence, with or without a term of Supervised Release, Home Confinement and GPS Monitoring.

### Rehabilitative Opportunities

This Court noted that Defendant's "rehabilitation has to be measured ... by subjective desire of being rehabilitated[;]" by his "objective conduct[;]" and, by his willingness to "[return] ill-gotten gains through their rightful owners or to the Government." (Sent. Tr., Pg. 71-72).

Defendant's rehabilitation efforts are seen by his quiet service in the church, the food pantry, and to the homeless and home-bound in his community. See Father Petarca's testimony (Sent. Tr., Pg. 40-44). Unfortunately, the current restrictions of Defendant's incarceration eliminate his ability to fulfill his $2 Million Forfeiture obligation or to prove his "subjective desire" with "objective conduct" and tangible results.

The Department of Justice (DOJ) and Bureau of Prisons (BOP) agree that "the use of incarceration is being re-evaluated as compared to the social benefits of non-custodial rehabilitative programs[]" and that home confinement is "a time of testing and an opportunity for inmates to assume increasing levels of personal responsibility while providing sufficient restriction to promote community safety and continue the sanction on the sentence." United States Department of Justice, Office of the Attorney General, 45 Op. O.L.C. 1:2021 OLC LEXIS 13 at 4 (Dec. 21, 2020); Also BOP Policy Statement 7320.01.

Should this Court modify Defendant's sentence --with or without a term of Supervised Release, Home Confinement and GPS Monitoring (at Defendant's expense)-- respect for the law is maintained and Defendant's rehabilitative opportunities are enhanced. OLC, Id. at 8; BOP Stmt., Id.

3.   Kinds of sentences available.

Defendant's Sentence

Defendant pleaded guilty to four counts of Securities Fraud (Punishable by 0-20 years in prison) and United States Sentencing Guideline Recommendation: Base Level 7; $25-65 Million Intended Loss +22; Mass Marketing +2; Acceptance Of Responsibility -3; Total Offense Level 28; Criminal History Category I; USSG Range 78-97 Months in Prison.

On December 10, 2019, this Court accepted the terms of the plea agreement; found no grounds for a variance; and, sentenced Defendant to the low end (31.6%) of the guidelines -- 84 Months in Prison. (Sent. Tr., Pg. 67-68, 72-73).

Alternative Sentences Available

1.  Actual Loss -- Actual Loss is the loss a victim
    actually suffers. USSG 2B1.1 (Application Note 3).

This case produced no identifiable victims and no actual loss. Therefore, properly calculated guidelines are: Base Level 7; Mass Marketing +2; Acceptance of Responsibility -3; Total Offense Level 6; Criminal History Category I; USSG Range 0-6 Months in Prison. A similar, low-end guidelines sentence would be about 2 Months in Prison.

2.  Intended Loss -- Intended Loss includes pecuniary harm a victim
    never actually suffered. USSG 2B1.1 (Application Note 3).

In the absence of an actual loss, courts have historically allowed the Government to recommend a sentencing enhancement for "Intended Loss" based on (a) the Defendant's alleged "ill-gotten gains" or (b) the Government's estimation of the fraud loss that could have been caused in furtherance of the scheme -- including loss that "would have been impossible or unlikely to occur." USSG 2B1.1 (Application Note 3).

(a) Intended Loss, based on Defendant's alleged ($2 Million) ill-gotten gains would produce the following USSG Recommendation: Base Level 7; $2 Million Intended Loss +16; Mass Marketing +2; Acceptance of Responsibility -3; Total Offense Level 22; Criminal History Category I; USSG Range 41-51 Months in Prison. A similar, low-end guidelines sentence is about 44 Months in Prison.

(b) Intended Loss, based on the Government's estimation of the fraud loss that could have materialized in furtherance of the scheme ($25-65 Million) produced the following USSG Recommendation: Base Level 7; $25-65 Million Intended Loss +22; Mass Marketing +2; Acceptance of Responsibility -3; Total Offense Level 28; Criminal History Category I; USSG Range 78-97 Months in Prison.

Intended Loss v. Actual Loss

On November 30, 2022, The United States Court of Appeals For The Third Circuit decided "that the loss enhancement in the guidelines application notes impermissibly expands the word 'loss' to include both intended loss and actual loss. Thus, the District Court erred when it applied the loss enhancement because [the] crimes caused no actual loss." United States v. Banks, 2022 U.S. App. LEXIS 33021 at 1-2 (3rd Cir., 2022).

Banks: In 2016, Banks was convicted of four counts of Wire Fraud and one count of Aggravated Identity Theft. Banks's scheme was to fraudulently gain the money and property of others to execute bogus FOREX.COM trades that would dump money into bank accounts he had set up. Banks, Id. at 2.

At sentencing, the District Court imposed a 12-point sentencing enhancement "because the attempted loss was greater than $250,000 ... [and] by his conduct, [Banks] intended to cause such a loss[.]" Id. at 7-8. "The District Court sentenced Banks to 104 Months' imprisonment[.]" Id. at 8.

On Appeal (Nov. 2022), the Circuit Court held that "'loss' in the context of U.S.S.G. §2B1.1 is not ambiguous[;] vacate[d] the judgment of sentence and remand[ed] this case so that the District Court [could] resentence Banks without the intended-loss enhancement." Id. at 24

<u>Defendant's Case</u>: In 2019, Defendant was convicted (by plea) of four counts of Securities Fraud related to his participation in a scheme to manipulate the stock of several public companies. (Sent. Tr., Pg. 15 and 68).

At sentencing, this Court acknowledged that restitution is not applicable in this case; that there are no identifiable victims; and, that there is no actual loss. (Sent. Tr., Pg. 15). In lieu of actual loss, the Government estimated that a fraud loss of $25-65 Million could have been caused in furtherance of the Defendant's scheme. This Court agreed and imposed a 22-point "Intended Loss" sentencing enhancement pursuant to the written plea agreement. (Plea Agreement, Pg. 7)(Sent. Tr., Pg. 67).

Defendant respectfully requests that this Court consider the Circuit Court's holding in <u>Banks</u>, 2022 U.S. App. LEXIS 33021 (3rd Cir., 2022) and GRANT Defendant a Sentencing Reduction that this Honorable Court deems appropriate.

4.    USSG Sentencing Range

Defendant's USSG Sentencing Range was calculated pursuant to his plea agreement (prior to <u>Banks</u>, (3rd Cir., 2022)) and included a 22-point "Intended Loss" enhancement: Total Offense Level 28; Criminal History Category I; USSG Range 78-97 Months in Prison.

5.    USSC Policy Statement

The applicable Sentencing Commission Policy Statement referenced in §3582(c)(1)(A) is found at USSG §1B1.13. Reduction in Term of Imprisonment. (November 01, 2023, Policy Statement).

10.

6. Need to avoid unwarranted sentencing disparities among "similarly situated" defendants.

Reducing Defendant's term of imprisonment and imposing an alternative sentence, with or without a term of supervised release or home confinement and GPS monitoring, would not create an unwarranted sentencing disparity among similarly situated defendants. See Banks, Id. at 1-2 and 24 (3rd Cir. 2022), resentencing defendant "without the intended-loss enhancement." Id.

## Safety of the Community

Defendant is convicted of a non-violent, white collar crime -- Securities Fraud with no identifiable victims and no actual loss. (Sent. Tr., Pg. 15). This Court acknowledged that this Defendant is not a risk to the safety of the community because "it does not seem that the defendant is likely to commit further crimes[.]" (Sent. Tr., Pg. 69).

## 18 U.S.C. §3582(c)(1)(A) - Other Reasons

1.  First Step Act -- Application of Time Credits

Eligible prisoners earn 10 or 15 days per month FSA Credit for successful participation on Evidence-Based Recidivism Reduction Programs (EBRR). Accrued FSA Credits allow these prisoners to earn up to one year off of their sentence; up to one year RRC/Halfway House; an unlimited amount of Home Confinement; and, time off their Supervised Release.

Defendant is an "eligible prisoner" but is being denied application of his earned (and accruing) FSA Time Credits because Defendant "may" be deported following his term of imprisonment and because his sentence does not include a term of supervised release. §523.44(a)(2) and (d)(2) -- Application of FSA Time Credits.

11.

Immigration Status

Inmates who are "[s]ubject to a final order of removal under immigration laws as defined in 8 U.S.C. 101(a)(17) (See 18 U.S.C. 3632(d)(4)(E)), [] may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release." §523.44(a)(2) -- Application of FSA Time Credits.

Here, Defendant is a non-citizen (Canadian National) but he is not subject to a "final order of removal" at this time. Therefore, Defendant is eligible for normal application of his FSA Credits earned. Should Defendant's "removal" status change, he is still entitled to use his accrued FSA Time Credits to "speed up the process of deportation." See 18 U.S.C. §3632(d)(4)(E)(i) and (ii).

While "deportable prisoners are ineligible to apply time credits" towards RRC or Home Confinement (Id. at (i)), "the Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act ("INA"; 8 U.S.C. 1182; 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration." (Id. at (ii)).

Defendant is a qualified "alien" under INA criteria because Securities Fraud is a crime of "Moral Turpitude" as defined in 8 U.S.C. §1182(2)(A)(i)(1). Therefore, should Defendant become subject to a "final order of removal," he must be made available "as early as practicable" in order to "speed up the process of deportation." 18 U.S.C. §3632(d)(4)(E)(ii) and 8 U.S.C. §1228(a).

The language and congressional intent could not be clearer. By using the phrase "any alien ... who seeks to earn time credits ... shall [be made available] as early as practicable" shows that Congress intended to accelerate the deportation process for aliens in federal facilities who are participating in EBRR Programs rather than to do so towards the very end of their sentences.

Term of Supervised Release

FSA Time Credits apply toward early transfer to supervised release under 18 U.S.C. §3624(g) only when "an eligible inmate has a term of supervised release after imprisonment included as part of his [] sentence as imposed by the sentencing court[.]" §523.44(d)(2) -- Application of FSA Time Credits.

This Court chose not to impose a term of supervised release as part of Defendant's sentence because he "is likely to be deported after imprisonment so [] supervised release is not required by the statute." (Sent. Tr., Pg. 73). An unforeseeable and additional consequence of this 2019 sentencing decision is that Defendant is now being denied application of his earned (and accruing) First Step Act Time Credits.

While the BOP has sole authority over the application of Defendant's FSA Time Credits (Section 523.44(a)(2) and (d)(2), this Court has full jurisdiction over Defendant's Term of Imprisonment and whether he deserves consideration for Compassionate Release or a Sentencing Modification that includes a term of Supervised Release. 18 U.S.C. §3582(c)(1)(A). In a similar case, the district court GRANTED a Sentencing Modification, adding a "Term of Supervised Release," so that a Romanian Citizen (subject to an "ICE" detainer but not a final order of removal) could benefit from his earned FSA Time Credits. United States v. Adrian Tiberiu Oprea, 2023 U.S. Dist. LEXIS 188648 (D. N.H. Oct. 20, 2023).

Defendant respectfully requests that this Court exercise its discretion to impose a Term of Supervised Release (with reporting requirements (remanded to the United States) or without reporting requirements (deported to Canada)) so that his FSA Credits are properly applied; or, in the alternative, reduce his sentence to reflect the number of First Step Act Credits he has earned and/or is projected to earn over his full term of imprisonment.

2.   COVID-19 + Conditions of Confinement

The onset of COVID was six months after Defendant was sentenced. As a result, Defendant has endured harsher terms of confinement than this Court intended. Defendant was sentenced to a low-security prison operating under normal conditions. Instead, Defendant was subjected to "super-max-like" confinement -- 24-hour lock-downs with no hot meals and limited access to facilities, phone, visits or religious services. While COVID-related restrictions may not independently constitute an extraordinary and compelling reason for compassionate release, this Court can consider the fact that COVID-related hardships 'undoubtedly increase[ a] prison sentence's punitive effect" and "exact[] a price on a prisoner beyond that imposed by an ordinary day in prison" and, therefore, "weigh in favor of sentencing reduction[.]" United States v. Amerson, 2023 U.S. Dist. LEXIS 120004 (E.D.N.Y. July 12, 2023).

3.   Defendant's Reentry Plan

Defendant, if deported, will reside with his parents at 1203 Saginaw Crescent, Mississauga, Ontario, Canada, L5H3W4; Phone: (416) 558-1795; and, will resume his position (V.P. of Operations) at DNR Technologies. Defendant, if remanded to the United States, will obtain probation approved U.S. housing and employment. Also, resume working remotely for DNR Technologies.

Whether Defendant is deported to Canada or remanded to the United States, his ability to earn an income and meet his rehabilitative obligations will be immediately restored. Should this Court GRANT Defendant a sentencing reduction or modification that includes a term of supervised release, home confinement, or GPS monitoring, Defendant agrees to pay the costs related to his home confinement (last reported to average $55.26 per day -- DOJ report "Home Confinement Under The CARES Act" (88 FR 19830, April 04, 2020)) and make best efforts to fulfill his $2 Million Forfeiture obligation.

## 18 U.S.C. §3582(c)(2) - Sentencing Range Subsequently Lowered

1. 2023 Retroactive Criminal History Amendments;
   PART B -- Zero-Point-Offenders

On August 24, 2023, the United States Sentencing Commission voted to make PART A and PART B of the 2023 Criminal History Amendments retroactive. Pertinent here, PART B of the Criminal History Amendments provides a two-level reduction of the offense level for "Zero-Point-Offenders" who meet the 10 criteria listed in the New Chapter Four Guideline at §4C1.1: (1) No Criminal History Points; (2) No 3A1.4 (Terrorism) Adjustment; (3) No Use or Threat of Violence; (4) No Offense Resulting in Death or Serious Bodily Injury; (5) No Sex Offense; (6) No Substantial Financial Hardship; (7) No Dangerous Weapon; (8) No 2H1.1 (Individual Rights) Offense; (9) No 3A1.1 (Hate Crime or Vulnerable Victims) or 3A1.5 (Serious Human Rights) Adjustment; and, (10) No 3B1.1 (Aggravating Roll) Adjustment and no Continuing Criminal Enterprise Under 21 U.S.C. 484.

Defendant is a qualified "Zero-Point-Offender" and is eligible to be considered for a two-level reduction in his offense level. This adjustment would reduce Defendant's United States Sentencing Guideline Recommendation from Level 28 (78-97 Months in Prison) to Level 26 (63-78 Months in Prison).

This Court sentenced Defendant to 84 Months in Prison and stated that the Defendant could appeal his sentence "if the sentence imposed is a sentence above the sentencing guideline range." (Sent. Tr., Pg. 75). Defendant requests that this Court consider his "Zero-Point-Offender" statue; reduce his Total Offense Level to 26 (63-78 Months in Prison); and, impose a similar low-end guidelines sentence of 68 Months in Prison.

## SUMMARY

Based on the following facts:

1. On December 10, 2019, Defendant was sentenced to 84 Months in Prison pursuant to USSG Recommendations that included a 22-Point enhancement for "Intended Loss;"

2. On November 30, 2022, The Third Circuit Court of Appeals decided that it is err to apply the loss enhancement when there is no finding of "Actual Loss." Banks, Id. at 1-2 and 24 (3rd. Cir.);

3. Defendant's crime produced No Actual Loss;

4. Defendant's erroneously enhanced USSG Recommendation exposed him to Total Offense Level 28; USSG Range 78-97 Months in Prison rather than Total Offense Level 06; USSG Range 0-6 Months in Prison;

5. On August 24, 2023, PART B of The 2023 Criminal History Amendment was made retroactive and gave qualified "Zero-Point-Offenders" a -2 Total Offense Level Reduction;

6. Defendant qualifies for the two-level reduction, which reduces his 2019 USSG Recommendation: Total Offense Level 26; USSG Range 63-78 Months in Prison; and, Post-Banks, Total Offense Level 04; 0-6 Months in Prison;

7. As of November 10, 2023, Defendant has been in prison 47 Months and has a projected release date of July 22, 2025 (649 days). EXHIBIT A-1; Individual Needs Plan - Program Review, 10-01-2023.

8. As of November 10, 2023, Defendant has earned 655 days FSA Credit which, if applied, would qualify him for immediate release. EXHIBIT B-2; FSA Time Credit Assessment, 10-06-2023.

Defendant believes he is a viable candidate for a sentencing modification under 18 U.S.C. §3582(c)(1)(A) for "Extraordinary and Compelling" reasons and/or under (c)(2) because his "sentencing range [] has subsequently been lowered by the Sentencing Commission." Id.

## THIS MOTION IS PROPERLY FILED

18 U.S.C. §3582(c)(1)(A) allows a prisoner to seek relief in federal court thirty days from the wardens receipt of that prisoner's compassionate release request (EXHIBIT C - Defendant's request to warden, October 02, 2023), even if the warden responded within thirty days and even if the prisoner fails to pursue available administrative appeals. United States v. Harris, 2020 U.S. App. LEXIS 27651, at *1 (3rd. Cir. July 20, 2020).

## CONCLUSION

For the foregoing reasons, Defendant prays that this Court (1) GRANT his request for sentencing modification under §3582(c)(1)(A); (2) Reduce his sentence to "Time Served" based on this Court's discretion, the Third Circuit Court's decision in Banks, and/or consideration of Defendant's 655 days FSA Time Credits earned; or, in the alternative, (3) Reduce his sentence to 68 months pursuant to his "Zero-Point-Offender" status, -2 Total Offense Level, and similar low-end guidelines sentence. Also, any other relief that this Court deems appropriate in the interest of justice.

Sincerely Submitted,

Dino Paolucci, ID# 42735-479
Federal Correctional Institution
P.O. BOX 10
Lisbon, OH. 44432

17.



### Individualized Needs Plan - Program Review    (Inmate Copy)

SEQUENCE: 02126755

Dept. of Justice / Federal Bureau of Prisons

Team Date: 10-01-2023

Plan is for inmate: PAOLUCCI, DINO 42735-479

| | | | |
|---|---|---|---|
| Facility: | ELK ELKTON FCI | Proj. Rel. Date: | 07-22-2025 |
| Name: | PAOLUCCI, DINO | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | **42735-479** | DNA Status: | HOU30327 / 08-23-2018 |
| Age: | 46 | | |
| Date of Birth: | 08-21-1977 | | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| ICE | DEPORTATION, A205 974 436, CANADA |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ELK | TMP UNT | WAITING JOB IF MEDICALLY CLEAR | 04-14-2022 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ELK | ESL HAS | ENGLISH PROFICIENT | 03-26-2020 |
| ELK | GED HAS | COMPLETED GED OR HS DIPLOMA | 03-26-2020 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ELK | C | AIDS AWARENESS-RPP<HN> | 04-14-2022 | 04-14-2022 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 09-14-2018 |
| CARE2 | STABLE, CHRONIC CARE | 04-04-2023 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 04-12-2022 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 04-20-2022 |
| YES F/S | CLEARED FOR FOOD SERVICE | 04-20-2022 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 08-09-2022 |

**FRP Payment Plan**

| Most Recent Payment Plan |
|---|

**FRP Assignment:** **COMPLT** **FINANC RESP-COMPLETED** **Start: 05-12-2022**

Inmate Decision: **AGREED** **$205.00** Frequency: **SINGLE**

Payments past 6 months: **$0.00** Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $400.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

**FRP Deposits**

Trust Fund Deposits - Past 6 months:   $915.00     Payments commensurate ?   N/A

New Payment Plan:   ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|



**Individualized Needs Plan - Program Review    (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: PAOLUCCI, DINO  42735-479

SEQUENCE: 02126755

Team Date: 10-01-2023

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 01-23-2023 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 09-25-2023 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 09-25-2023 |
| N-COGNTV N | NEED - COGNITIONS NO | 09-25-2023 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 04-14-2022 |
| N-EDUC N | NEED - EDUCATION NO | 09-25-2023 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 09-25-2023 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 09-25-2023 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 09-25-2023 |
| N-MEDICL Y | NEED - MEDICAL YES | 09-25-2023 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 09-25-2023 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 09-25-2023 |
| N-TRAUMA Y | NEED - TRAUMA YES | 09-25-2023 |
| N-WORK N | NEED - WORK NO | 09-25-2023 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 09-25-2023 |

**Progress since last review**

Paolucci has not participated in any programs.

**Next Program Review Goals**

Enroll in the Non-Residential Drug Abuse Program. Enroll in the Arthritis Foundation Walking course.

**Long Term Goals**

Complete the Resume course and develop a resume and cover letter prior to July 2025, with the assistance of the Employment Resource Center to help seek employment upon release.

**RRC/HC Placement**

No.
Criminal alien releasing to custody of ICE.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : N/A
- Offense : Securities Fraud, 84 months.
- Prisoner : 1-26-21 - Refusing to Obey an Order, Code 307.
- Court Statement : N/A
- Sentencing Commission : N/A

Inmate is scheduled to be deported to Canada upon release.

**Comments**

Treaty Transfer: Eligible and interested.
ITTCA : Denied by US, 07-01-2020

EXHIBIT A-3

 **Individualized Needs Plan - Program Review   (Inmate Copy)**   SEQUENCE: 02126755
Dept. of Justice / Federal Bureau of Prisons                   Team Date: 10-01-2023
Plan is for inmate: PAOLUCCI, DINO   42735-479

Name:   PAOLUCCI, DINO             DNA Status:   HOU30327 / 08-23-2018
Register No.:   **42735-479**
Age:   46
Date of Birth:   08-21-1977

Inmate   (PAOLUCCI, DINO, Register No.: 42735-479)

Date

Unit Manager / Chairperson                     Case Manager

Date                                          Date

## FSA Time Credit Assessment
Register Number:42735-479, Last Name:PAOLUCCI

EXHIBIT B-1

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 42735-479 | Responsible Facility: ELK |
| Inmate Name | Assessment Date.....: 10-06-2023 |
|   Last............: PAOLUCCI | Period Start/Stop...: 02-07-2020 to 10-06-2023 |
|   First...........: DINO | Accrued Pgm Days....: 1318 |
|   Middle..........: | Disallowed Pgm Days.: 19 |
|   Suffix..........: | FTC Towards RRC/HC..: 615 |
| Gender............: MALE | FTC Towards Release.: 0 |
| Start Incarceration: 12-10-2019 | Apply FTC to Release: No |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 02-07-2020 | 10-06-2023 | accrue | 1318 |

  **Cannot apply FTC**

    No Term Suprv: Yes

------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 02-07-2020 | 09-02-2020 | accrue | 208 |

  Accrued Pgm Days...: 208
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60

------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 09-02-2020 | 03-04-2021 | accrue | 183 |

  Accrued Pgm Days...: 183
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 105

------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 03-04-2021 | 03-23-2021 | disallow | 19 |

  **Not in qualifying admit status**

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| I-T | ARS | RELEASE | 02-07-2020 | 1613 | 02-07-2020 | 1613 |
| NLK | ARS | TRANSFER | 03-03-2021 | 0833 | 03-03-2021 | 0833 |
| 9-E | ARS | A-ADMIT | 03-03-2021 | 0833 | 03-03-2021 | 1718 |
| OKL | ARS | A-BOP HLD | 03-03-2021 | 1618 | 03-23-2021 | 0407 |
| 9-E | ARS | RELEASE | 03-03-2021 | 1718 | 03-03-2021 | 1718 |

------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 03-23-2021 | 10-06-2023 | accrue | 927 |

  Accrued Pgm Days...: 927

------------------------------------------------------------------------

**FSA Time Credit Assessment**                            EXHIBIT B-2
Register Number:42735-479, Last Name:PAOLUCCI

**U.S. DEPARTMENT OF JUSTICE**                     **FEDERAL BUREAU OF PRISONS**

```
   Carry Over Pgm Days: 1
   Time Credit Factor.: 15
   Time Credits.......: 450
--- FSA Assessment ------------------------------------------------------------
 #   Start        Stop         Status        Risk Assignment  Risk Asn Start     Factor
001  02-07-2020   03-06-2020   ACTUAL        FSA R-LW         04-28-2021 1559    10  x 1 mo = 10
002  03-06-2020   09-02-2020   ACTUAL        FSA R-LW         04-28-2021 1559    10  x 6 mo = 60
003  09-02-2020   03-01-2021   ACTUAL        FSA R-LW         04-28-2021 1559    15  x 6 mo = 90
004  03-01-2021   08-28-2021   ACTUAL        FSA R-LW         04-28-2021 1559    15  x 6 mo = 90
005  08-28-2021   02-24-2022   ACTUAL        FSA R-LW         04-28-2021 1559    15  x 6 mo = 90
006  02-24-2022   08-23-2022   ACTUAL        FSA R-LW         10-04-2021 1434    15  x 6 mo = 90
007  08-23-2022   02-19-2023   ACTUAL        FSA R-LW         04-27-2022 0721    15  x 6 mo = 90
008  02-19-2023   08-18-2023   ACTUAL        FSA R-LW         10-18-2022 1052    15  x 6 mo = 90
009  08-18-2023   02-14-2024   ACTUAL        FSA R-LW         04-05-2023 1038    15  x 3 mo = 45
                                                                                 _____
                                                                                 Total 655 Days Cr
```

EXHIBIT C-1

Dino Paolucci, ID# 42735-479
Federal Correctional Institution
P.O. BOX 10 · Lisbon, OH. 44432

October 02, 2023

Submitted To:

I. Healy, Warden
FCI-Elkton
Lisbon, OH. 44432

Submitted By:

Dino Paolucci
Case No. 2:16-CR-00503-ER-1
United States v. Paolucci

---

Request For Compassionate Release To Home Confinement Pursuant To
18 USC §3582(c)(1)(A)(i) For "Extraordinary and Compelling Reasons;"
-OR-
Request For Release To Home Confinement Pursuant To
18 USC §3624(c)(2) of The Second Chance Act.

---

Dear Warden,

I, Dino Paolucci, request: (1) Compassionate Release into Home Confinement pursuant to 18 USC §3582(c)(1)(A)(i) for "Extraordinary and Compelling" reasons; or, in the alternative, (2) Release into Home Confinement pursuant to The Second Chance Act, 18 USC §3624(c)(2).

1. "Compassionate Release" To Home Confinement Pursuant To 18 U.S.C. §3582(c)(1)(A) For "Extraordinary and Compelling Reasons.

The BOP has sole authority over a convicted person's Place of Imprisonment (Section 3621(a) and (b)) and may release a prisoner from a "secured custody facility" into Home Confinement if it finds one or more "Extraordinary and Compelling" reasons for compassionate release. 18 USC §3582(c)(1)(A)(i).

Prior to 2018, "Extraordinary and Compelling" reasons for compassionate release were limited to offenders who are elderly; terminally ill; or, unable to perform self-care. That is no longer the case. In 2018, the First Step Act was passed and the BOP was given significant discretion to determine what qualifies as an "Extraordinary and Compelling" reason for a person's release into Home Confinement.

1.

The BOP's expanded authority to decide what qualifies as "Extraordinary and Compelling" allows it to consider the Nature and Circumstances of the offense; the History and Characteristics of the offender; the Resources of the Facility in which the offender is housed; and, any other factor(s) it deems in the best interest of the offender or the facility in which the offender is housed. In sum:

(1)  The First Step Act directs that the BOP "shall, to the extent possible, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted." See, U.S. DOJ, Office of the Attorney General, 45 OP. O.L.C. LEXIS 13 at Pg. 4.

(2)  The BOP has agreed that "Congress's expansion of home confinement in recent years demonstrates that 'the use of incarceration is being re-evaluated as compared to the social benefits of non-custodial rehabilitative programs.' The BOP also ... notes that exercising discretion will allow the Bureau to 'manage its resources in an efficient manner that considers both public safety and the needs of the individual offender.'" Id. OLC LEXIS 13, Pg. 4.

(3)  The Attorney General agrees with the BOP's Program Statement on Home Confinement which describes it as "a time of testing and an opportunity for inmates to assume increasing levels of personal responsibility while providing sufficient restriction to promote community safety and continue the sanction on the sentence." Id. OLC LEXIS 13, Pg. 8

My personal background and the facts of my case, coupled with my need for "non-custodial rehabilitation," fit the criteria the Congress, Attorney General Barr, and the BOP had in mind when they determined to increase the use of "Home Confinement" and expand what qualifies as an "Extraordinary and Compelling" reason for Compassionate Release pursuant to 18 USC §3582(c)(1)(A)(i).

REASONS TO GRANT COMPASSIONATE RELEASE OR COME CONFINEMENT

Nature and Circumstances of the Offense

In December, 2019, I pleaded Guilty to Securities Fraud. The Court sentenced me to eighty-four months in prison; ZERO Restitution; and No Supervised Release.

2.

EXHIBIT C-3

From 2012 through 2013, I participated in a scheme to manipulate the stock of several public companies. While that scheme involved a significant amount of money and could have undermined the public confidence in our financial institutions, it produced "No Actual Victims" and "No Actual Loss." As a result, there is no Order of Restitution. Instead, I was sentenced based on an "Estimated $25 Million 'Intended Loss'" and ordered to forfeit an "Estimated $2 Million 'Ill-Gotten Gains." I do not deny the seriousness of my offense, to which I Pleaded Guilty and Accepted Responsibility.

## History and Characteristics of the Offender

I was born August 21, 1977, and credit my parents with providing a loving home; regular family vacations; Catholic upbringing; access to school and sports; and, introduction to business.

Considering my mostly privileged life, I have no excuses for my offense conduct and current incarceration. That said, I have been humbled by this experience and pray that I be considered for Compassionate Release and/or Home Confinement based the the factors outlined hereafter.

## First Step Act -- Application of Time Credits

I am being denied application of my earned (and accruing) FSA Time Credits because the Court failed to impose a Term of Supervised Release on my sentence. In the alternative to "First Step Act Credit" application, I request the BOP use its expanded discretion to change my "Place of Imprisonment" to Home Confinement and to reflect the number of days I have earned in Good Conduct Time and First Step Act Credits accrued.

## Term of Supervised Release

The Court failed to impose a term of Supervised Release in my case because I am Canadian citizen and "may be deported" following my term of imprisonment;" And, therefore, a term of supervised release is not "required."

EXHIBIT C-4

In my case, a term of supervised release is discretionary and may be imposed with reporting requirements.(remanded to the United States) or without reporting requirements (deported to Canada).

Immigration Status

I am not subject to a "Final Removal Order" at this time. However, should my status change, I am still entitled to use my accrued FSA Time Credits to "speed up the process of deportation." See 18 USC §3632(d)(4)(E)(i) and (ii).

While "deportable prisoners are ineligible to apply time credits" towards RRC or Home Confinement (Id. at (i)), "the Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act ("INA"; 8 U.S.C. 1182; 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration." (Id. at (ii)).

I am a qualified "alien" under INA criteria because my offense conduct (Securities Fraud) is a crime of "moral turpitude" as defined in 8 U.S.C. §1182(2)(A)(i)(1) and as classified by The United States Department of Foreign Affairs Manual. Therefore, should I become subject to a deportation proceeding, I must be available to participate in that proceeding "as early as practicable" into my incarceration. 8 U.S.C. §1228(a)).

The language and congressional intent could not be clearer. Congress intended to accelerate the deportation process for aliens in federal facilities who are participating in EBRR Programs rather than do so towards the very end of their sentences.

The law is clear, by using the phrase "any alien ... who seeks to earn," that these aliens do not actually have to complete a certain amount of programs for this subsection to be applicable to them. The phrase "as early as practicable" and the use of the word "shall" does not provide the BOP any authority to delay a deportation proceeding or deny the application of this subsection.

EXHIBIT C-5

## COVID-19 + Conditions of Confinement

The onset of COVID came six months after I was sentenced. Therefore, I have endured "harsher terms of confinement" than the sentencing court intended. I was sentenced to a low-security prison operating under normal conditions. Instead, my imprisonment has included: COVID-related lockdowns and "Super-Max-Like" confinement; 24-hour cell confinement with no hot meals; limited access to bathroom and shower facilities; limited access to the legal library and education, e-mail, phone, visits, commissary, recreation and religious services. While COVID-related restrictions may not independently constitute and extraordinary and compelling reason to GRANT Home Confinement, myriad courts and the BOP have agreed that COVID-related hardships have "undoubtedly increased [a] prison sentence's punitive effect" and "exacts a price on a prisoner beyond that imposed by an ordinary day in prison" and, therefore, "weigh in favor of" home confinement or compassionate release.

## Sentences Available

While the BOP lacks authority to reduce a prison sentence, it can consider a prisoner's term of incarceration and "any other factors" is deems appropriate, when it determines a prisoner's "Place of Imprisonment," and whether that prisoner qualifies for compassionate release or home confinement.

Intended Loss v. Actual Loss: In this case, there was no Actual Loss so the Court decided to impose a sentencing enhancement on "Intended" and "Estimated" Loss. This subjective enhancement exposed me to 78-97 months in prison rather than a possible sentence of Zero months in prison. I ask the BOP to consider this fact when deciding if I qualify for a term of Home Confinement equal to my accrued First Step Act Credits.

2023 Retroactive Criminal History Amendments: In 2023, the United States Sentencing Commission made Zero Point Offenders' (-2 Criminal History Points) Sentencing Guidelines retroactive. I am a zero-point-offender and this USSG change would have exposed me to 63-78 months in prison. I ask that the BOP consider this fact as it determines whether I qualify for compassionate release or home confinement equal to my accrued First Step Act Credits.

EXHIBIT C-6

Second Chance Act- 18 USC §3624(c)(2)

While the BOP has no authority to modify a prisoner's sentence (that jurisdiction lies with the sentencing court), the BOP has sole authority over a convicted person's "Place of Imprisonment." 18 USC §3621. the first sentence of the Second Chance Act, §3624(c)(2) provides: "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." In this case, I am eligible for at least 6 months Home Confinement.

Safety of the Community

I have no history of violence and, in this case, I am convicted of a non-violent, white collar, crime with no identifyable victims and no actual loss. While the court deemed my crime "serious" due to the amount of money involved, it conceded that I am not a risk to the community and that "the fact of imprisonment is as important and perhaps more important as the length of imprisonment. Moreover, my release into Home Confinement, which could include GPS Monitoring and Supervised Release, will provide "sufficient restriction to promote public safety and continue the sanction of the sentence." Id. OLC LEXIS 13, Pg. 8; BOP Statement No. 7320.01.

Considering all reasons herein, I request the BOP exercise its sole authority over my "Place of Confinement" and GRANT me immediate release into Home Confinement; or, in the alternative, GRANT Home Confinement, at the earliest date possible and according to the Second Chance Act.

Sincerely Submitted,

Dino Paolucci, ID# 427735-479

6.

Dino Padilli 42735-479
P.O Box 10
Lisbon, OH 44432

CERTIFIED MAIL

7022 2410 0002 2469 2386



U.S. POSTAGE PAID
FCM LG ENV
LISBON, OH 44432
NOV 03, 2023

$0.00

Retail

19106

R2304Y122504-03

RDC 99

⬍42735-479⬍
District Court
Room 2609
601 Market ST
Phila, PA 19106-1729
United States

Attn: Clerk of Court

U.S.M.S.
X-RAY

RECEIVED
NOV 7 2023